UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| J. Bandy-Bey, | Civil No. 06-173 (JRT/SRN) |
| **Plaintiff,** | |
| v. | **REPORT AND RECOMMENDATION** |
| Robert Feneis, Joseph Cosgrove, Jim Zawacki, Tim Gorr, Greg Smith, Beth Walker, Mr. Maddox, Mr. Sass, Mr. Pentland, Jennifer Southwick, Denise Barger, Douglas Olson, Calvin Stenlund, Kendal, Sorry, and Rossolli, | |
| **Defendants.** | |

_____

J. Bandy-Bey, pro se, #125257, Minnesota Correctional Facility, 1000 Lakeshore Drive, Moose Lake, Minnesota 55767

Angela Behrens, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 900, St. Paul, Minnesota 55101, for Defendants Robert Feneis, Denise Barger, Douglas Olson, Calvin Stenlund, Joseph Cosgrove, Jim Zawacki, Tim Gorr, Greg Smith, Beth Walker, Mr. Maddox, Captain Sass, and Lieutenant Pentland

_____

SUSAN RICHARD NELSON, United States Magistrate Judge

This matter comes before the undersigned United States Magistrate Judge on a Motion for Summary Judgment filed by Defendants Robert Feneis, Denise Barger, Douglas Olson, Calvin Stenlund, Joseph Cosgrove, Jim Zawacki, Tim Gorr, Greg Smith, Beth Walker, Mr. Maddox, Captain Sass, and Lieutenant Pentland (Doc. No. 91); Plaintiff's Motion to Disqualify Declarations (Doc. No. 98); Plaintiff's Motion Challenging Summary Judgment (Doc. No. 99); Plaintiff's Motion to Void Counsel's Response (Doc. No. 107); and Plaintiff's Motion for Intervention and Appointment of Counsel (Doc. No. 122). This case has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of

Minnesota Local Rule 72.1.

**I.   BACKGROUND**

Plaintiff is a prisoner at the Minnesota Correctional Facility (MCF) in Moose Lake, Minnesota. He is suing numerous prison officials under 42 U.S.C. § 1983 for alleged violations of his civil rights based on events occurring in late 2005 and early 2006 when he was incarcerated at the MCF in Rush City, Minnesota. Liberally construed, the Third Amended Complaint, filed on January 31, 2007, alleges claims of retaliation, deliberate indifference to medical needs, unlawful termination from a prison job, and racial discrimination, as well as violations of the First Amendment and the Equal Protection Clause.

On December 1, 2005, Plaintiff saw health services unit nurse Heather Emerson for low back pain, an upset stomach, and blood in his stool. He said he was having difficulty taking his medication, Motrin, with food because of his work schedule. He also requested a medical authorization for a lower bunk. Ms. Emerson told him to take his medicine as directed and as allowed by his work schedule. She scheduled Plaintiff to see a physician's assistant to discuss other options.

Plaintiff was working in the prison kitchen at this time. After his appointment with Ms. Emerson, he told the food services director, Ralph Flesher, and corrections officers Calvin Stenlund and Douglas Olson that a health unit staff member had said he should be permitted to return to his cell to take his medication during his work shift. When Mr. Flesher checked with the health services unit, a representative denied that Plaintiff had been told this.

Generally, MCF policy prohibits inmates from leaving their work area and returning to their cells. If an inmate needs to leave his work area, he must obtain a pass from a staff person,

who then notifies the residential unit by radio that the inmate is leaving the work area and returning to his cell. The same process is required when an inmate returns to his work area. There are several reasons for the policy. The policy prevents inmates from smuggling food out of the kitchen, and it limits disruptions to the work environment. In addition, whenever a worker is absent, other inmates must cover for him. Thus, for an inmate worker to leave his work area and return to his cell for a medical reason, he must have authorization from a health services staff member.

On December 2, 2005, Plaintiff sent an informal communication, known as a kite, to Mr. Flesher, accusing him of falsely stating that Plaintiff did not need to take his medication with food. Mr. Flesher responded that he had not said anything about whether Plaintiff needed to take his medication with food, but had merely repeated what he had been told by the health services staff member. On December 4, 2005, Plaintiff wrote a kite to Officer Stenlund claiming that he had authorization to return to his cell to take his medication during his work shift. On December 14, 2005, Plaintiff received a written notice that Denise Barger, the health services administrator at the prison, had confirmed that Plaintiff could take his medication before reporting to work and that there was no medical reason for him to return to his cell during his shift.

Plaintiff returned to the health services unit on December 15, 2005. He again requested authorization for a lower bunk and authorization to return to his cell during his work shift to take his medication. Plaintiff appeared angry, and the nurse said he should mention these issues at his upcoming appointment with the physician's assistant.

On December 16, 2005, Officer Olson wrote an incident report regarding Plaintiff's repeated unauthorized requests to leave work and return to his cell. Officer Olson noted that he

3

had contacted the health services unit and was told that Plaintiff did not need to return to his cell for any medical reason. Officer Stenlund also wrote an incident report about Plaintiff's almost daily demands to return to his cell without medical authorization. Based on Plaintiff's repeated misrepresentations, Officer Stenlund, Officer Olson, and Mr. Flesher decided to terminate Plaintiff's employment as a kitchen worker. That day, Plaintiff was charged with lying and misrepresentation, and he was terminated from his job. The termination notice instructed Plaintiff that he must appeal within twenty-four hours. Plaintiff did not appeal within this time period.

Plaintiff saw physician's assistant Jennifer Southwick on December 19, 2005, and repeated his request for a lower bunk. Ms. Southwick denied the request because Plaintiff had a full range of motion and was able to bend and almost touch his toes. Because lower bunks are in very high demand at the prison, a medical authorization is usually not given unless the inmate is physically disabled or clearly unable to access an upper bunk. Ms. Southwick discontinued Plaintiff's Motrin prescription and started Plaintiff on Disalcid to alleviate his upset stomach. She also prescribed Maalox and a low dose of Elavil. Laboratory results of three specimens showed no blood in Plaintiff's stool.

On December 23, 2005, Plaintiff wrote a kite to Mr. Flesher regarding his job termination. Mr. Flesher responded that Plaintiff had not appealed his termination within twenty-four hours and that he continued to support the decision. On December 28, 2005, the discipline unit withdrew the lying and misrepresentation charges against Plaintiff because "the issue involved was a medical issue." (Stenlund Aff. ¶ 11, June 28, 2007.) Plaintiff was not reinstated to his kitchen job, however, because the withdrawn charges did not change the fact

that Plaintiff had made the misrepresentations. Plaintiff subsequently wrote kites to Warden Robert Feneis, Associate Warden Joseph Cosgrove, and Administrative Assistant Beth Walker about his termination. Associate Warden Cosgrove responded on behalf of all three officials on January 19, 2006. He classified Plaintiff's kites as an appeal of his job termination, which he denied on the ground that Plaintiff's conduct was unacceptable. Plaintiff then wrote a letter to Minnesota Department of Corrections (DOC) Commissioner Joan Fabian, complaining that even though he had been cleared of disciplinary charges, he was not reinstated to his job. Commissioner Fabian asked Warden Feneis to respond to the letter, and Warden Feneis upheld Associate Warden Cosgrove's decision.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A non-moving party cannot rely on the "mere existence of some alleged factual dispute between the parties [to] defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphases in original). "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial," then Rule 56 requires the entry of summary judgment in favor of the moving party. Id. at 322-23. All evidence will be viewed in the light most favorable to the nonmoving party. Vette Co. v. Aetna Cas. & Surety Co., 612 F.2d 1076, 1077 (8th Cir. 1980).

### III. DISCUSSION

#### A. The Motion for Summary Judgment

Defendants Robert Feneis, Denise Barger, Douglas Olson, Calvin Stenlund, Joseph Cosgrove, Jim Zawacki, Tim Gorr, Greg Smith, Beth Walker, Mr. Maddox, Captain Sass, and Lieutenant Pentland (collectively "Defendants") filed their motion for summary judgment on June 29, 2007, when the Second Amended Complaint was the operative pleading in this case. (See Doc. Nos. 27, 62, 70, 83, 108.) The Court has compared the Second Amended Complaint and the Third Amended Complaint and finds that the claims against Defendants are essentially the same.[1] The Court therefore concludes that Defendants will not be prejudiced by applying the motion for summary judgment to the claims alleged in the Third Amended Complaint. Nor will Plaintiff be prejudiced. Plaintiff has had an opportunity to file a memorandum in opposition to the motion for summary judgment, which he did. His memorandum confirms that his current claims relate to the events which occurred during his incarceration at the MCF in Rush City, Minnesota, which are the subject of Defendants' motion.

In the motion for summary judgment, Defendants contend that Plaintiff failed to exhaust his administrative remedies with respect to all of his claims except the job termination claim,

---

[1] The primary differences between the two pleadings are additional allegations against Defendant Jennifer Southwick and the addition of Defendants Kendal, Sorry, and Rossolli. None of these Defendants have moved for summary judgment.

which they concede is not subject to the prison's grievance procedure.

The Prison Litigation Reform Act of 1995 directs: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." Porter v. Nussle, 534 U.S. 516, 532 (2002). Exhaustion is mandatory. Id. at 524. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

The DOC has a formal procedure to address the grievances of prison inmates concerning prison conditions or staff. An inmate must first attempt to informally resolve his grievance by submitting a kite to a prison staff member. If the grievance is not resolved, he must submit a formal offender grievance form to the facility's grievance coordinator who investigates the complaint. The findings are reported to the prison warden, who rules on the grievance. If the inmate is not satisfied with the warden's decision, he can appeal by submitting a formal appeal form to the DOC's central office grievance appeal coordinator, who investigates the grievance and submits the results to a DOC assistant or deputy commissioner. That official makes a final determination of the grievance.

In the present case, Plaintiff failed to file any formal grievances or appeals with respect to his claims of deliberate indifference to medical needs, racial discrimination, retaliation by

denying law library access, First Amendment violations, or equal protection violations. Accordingly, these claims brought against Defendants Robert Feneis, Denise Barger, Douglas Olson, Calvin Stenlund, Joseph Cosgrove, Jim Zawacki, Tim Gorr, Greg Smith, Beth Walker, Mr. Maddox, Captain Sass, and Lieutenant Pentland should be dismissed without prejudice.  See Maddix v. Crawford, 216 F. App'x 605, 606 (8th Cir. 2007) (dismissal for failure to exhaust should be without prejudice).

With respect to Plaintiff's job termination claim, this claim is not covered by the DOC's formal grievance procedure, and as such, there is no exhaustion requirement.  The Court therefore proceeds to the merits.  Plaintiff claims that he was terminated from his job in retaliation for filing grievances against Mr. Flesher and Officer Stenlund.  If Plaintiff was disciplined for an actual violation of prison rules, however, then his claim of retaliation fails. See Orebaugh v. Caspari, 910 F.2d 526, 528 (8th Cir. 1990).  Defendants need only show "some evidence" that Plaintiff actually violated a prison rule.  Moore v. Plaster, 266 F.3d 928, 931 (8th Cir. 2001) (citing Goff v. Burton, 7 F.3d 734, 738 (8th Cir. 1993)).  Plaintiff was terminated from his employment for making repeated misrepresentations to at least three prison staff members that he needed to return to his cell during his work shift to take medication and that the health services unit had authorized him to do so.  Although the charges were later withdrawn, it was not because Plaintiff had told the truth, but because the underlying issue was medical in nature.  The decision to withdraw the charges did not change the fact that Plaintiff had made the misrepresentations.  Thus, Defendants have produced sufficient evidence that Plaintiff actually violated the prison rule against lying and making misrepresentations, and his retaliation claim should be dismissed.

In addition, Plaintiff has not produced any evidence that he was terminated because he filed grievances against Mr. Flesher and Officer Stenlund.[2] That is, Plaintiff has not demonstrated that the termination "was motivated by impermissible retaliation." See Farver v. Vilches, 155 F.3d 978, 979 (8th Cir. 1998). A "plaintiff-inmate has a heavy evidentiary burden to establish a prima facie case," and "[m]erely alleging that an act was retaliatory is insufficient." Meuir v. Greene County Jail Employees, 487 F.3d 1115, 1119 (8th Cir. 2007) (citations omitted). Plaintiff has not satisfied his burden. He has merely alleged that the termination was retaliatory. On the other hand, Defendants have shown that Plaintiff was terminated because he made repeated misrepresentations to Mr. Flesher, Officer Stenlund, and Officer Olson about his purported need to return to his cell during his work shift. Although the disciplinary charges of lying and misrepresentation were later dismissed because the underlying issue was medical in nature, this did not change the fact that Plaintiff made the misrepresentations.

To the extent Plaintiff's job termination claim could be predicated on due process, he has not shown a protected liberty interest in his prison job. Generally, "[i]nmates have no constitutional entitlement to tenure in prison jobs." Lyon v. Farrier, 727 F.2d 766, 769 (8th Cir. 1984). The question is whether the loss of employment was a significant and atypical hardship in relation to the ordinary circumstances of prison life. See Callender v. Sioux City Residential Treatment Facility, 88 F.3d 666, 669 (8th Cir. 1996) (holding that the revocation of a prisoner's work release program did not violate due process) (citing Sandin v. Conner, 515 U.S. 472, 485 (1995)); Ahmed v. Fenesis, Civ. No. 05-2388 (JRT/FLN), 2007 WL 2746842, at *9 (D. Minn. Sept. 19, 2007).

---

[2] Actually, Plaintiff did not even file formal grievances against Flesher and Stenlund; he only sent them informal kites.

9

In <u>Sanders v. Norris</u>, 153 F. App'x 403 (8th Cir. 2005), the Eighth Circuit considered a situation in which an inmate lost his prison job after he was found guilty of violating the prison's drug policy. Although the disciplinary conviction was later reversed, the inmate nonetheless brought suit under § 1983 alleging a violation of due process. <u>Id.</u> at 404. The court held that the circumstances did not warrant § 1983 relief because the inmate did not have a constitutional right to a particular job. <u>Id.</u> Moreover, any violation was remedied by the reversal of the conviction. <u>Id.</u> Similarly, here, Plaintiff had no constitutional right to his job as a kitchen worker, and even if there was a constitutional violation, it was remedied by the withdrawal of the charges and his assignment to a different job in the prison's barbershop. Accordingly, the decisions to terminate and to not reinstate Plaintiff to his job as a kitchen worker did not violate due process.

**B.     Plaintiff's Motion to Disqualify Declarations**

Plaintiff moves to strike the declarations submitted in support of the motion for summary judgment. He asserts that the declarations are fraudulent because they are unsworn and have anomalous page numbering. He also contends that the grievance procedure contained in the declaration of Beth Walker was not in effect at the time of the relevant events.

It is true that some of the pages of the declarations are numbered atypically and that some consecutive pages contain identical paragraphs, but these discrepancies do not mean that the contents of the declarations are false. The errors are not of substance, but of form, and are likely attributable to no more than careless lawyering and the practice of sending signature pages by fax. Moreover, each declarant swore under penalty of perjury that his or her declaration was true and correct, which is sufficient for the purpose of a summary judgment motion. <u>See</u> Fed. R. Civ.

P. 56(e). With respect to the grievance procedure described by Ms. Walker, Plaintiff has not presented any evidence to support his assertion that the grievance procedure was materially different. In addition, the aspects of the procedure identified as different do not relate to the three-step procedure he failed to follow to exhaust his administrative remedies. The Court concludes that none of the declarations should be stricken.

### C. Plaintiff's Motion Challenging Summary Judgment

In this motion, Plaintiff challenges the entry of summary judgment on several grounds. First, he asserts that Defendants submitted his medical records to the Court without filing a motion to compel. However, there is no requirement that a motion to compel must be filed before submitting evidence to the Court in support of a motion for summary judgment. Second, he contends that the declarations of Ms. Barger, Mr. Flesher, Officer Olson, and Officer Stenlund are fraudulent. The Court has already concluded to the contrary, however, in Part III.B above. Third, Plaintiff alleges that his constitutional rights were violated, but his failure to exhaust his administrative remedies prevents the Court from reaching the merits of all but one of his claims, and the one claim not subject to exhaustion was not meritorious. Finally, Plaintiff argues that the grievance procedure does not comply with federal law, but he makes no factual or legal showing to support this argument. Plaintiff's motion challenging the entry of summary judgment should be denied.

### D. Plaintiff's Motion to Void Counsel's Response

Plaintiff has moved to strike Defendant Jennifer Southwick's response to Plaintiff's objections to a previous Report and Recommendation. This Court does not address such motions because they pertain to post-Report and Recommendation procedure; the Court takes no position

on what the District Court may choose to consider or to strike when considering a decision by this Court. The Court merely notes that the motion is pending and reserves it for resolution by the District Court.

### E. Plaintiff's Motion for Intervention and Appointment of Counsel

In this motion, Plaintiff asks the Court to "intervene" and investigate his claims brought in this case and others. There is no legal basis for such a request, and it should be denied. Plaintiff also asks for appointment of counsel, which should be denied for the reasons expressed in this Court's prior Orders of August 11, 2006 and June 1, 2007.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. The Motion for Summary Judgment filed by Defendants Robert Feneis, Denise Barger, Douglas Olson, Calvin Stenlund, Joseph Cosgrove, Jim Zawacki, Tim Gorr, Greg Smith, Beth Walker, Mr. Maddox, Captain Sass, and Lieutenant Pentland (Doc. No. 91) be **GRANTED**;

2. Plaintiff's claims of deliberate indifference to medical needs, racial discrimination, retaliation by denying law library access, and First Amendment and equal protection violations against Defendants Robert Feneis, Denise Barger, Douglas Olson, Calvin Stenlund, Joseph Cosgrove, Jim Zawacki, Tim Gorr, Greg Smith, Beth Walker, Mr. Maddox, Captain Sass, and Lieutenant Pentland be **DISMISSED WITHOUT PREJUDICE**;

3. Plaintiff's claims of unlawful job termination and retaliation by job termination

against Defendants Robert Feneis, Denise Barger, Douglas Olson, Calvin Stenlund, Joseph Cosgrove, Jim Zawacki, Tim Gorr, Greg Smith, Beth Walker, Mr. Maddox, Captain Sass, and Lieutenant Pentland be **DISMISSED WITH PREJUDICE**;

4. Plaintiff's Motion to Disqualify Declarations (Doc. No. 98) be **DENIED**;

5. Plaintiff's Motion Challenging Summary Judgment (Doc. No. 99) be **DENIED**;

6. Plaintiff's Motion to Void Counsel's Response (Doc. No. 107) be **DEFERRED TO THE DISTRICT COURT**; and

7. Plaintiff's Motion for Intervention and for Appointment of Counsel (Doc. No. 122) be **DENIED**.

Dated: July 25, 2008

    s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **August 11, 2008**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.