# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

**Civil No. 06-173 (JRT/SRN)**

**J. Bandy-Bey,**

        **Plaintiff,**

     **v.**

**Jennifer Southwick, Kendal, Sorry and Rossolli,**

        **Defendants.**

**REPORT AND RECOMMENDATION**

_____

     J. Bandy-Bey, Minnesota Correctional Facility - Moose Lake, 1000 Lakeshore Drive, Moose Lake, Minnesota 55767, pro se.

     Carolin J. Nearing, Geraghty, O'Loughlin & Kenney, 55 East Fifth St., Suite 1100, St. Paul, Minnesota, 55101, for Defendant Southwick.

_____

SUSAN RICHARD NELSON, United States Magistrate Judge

     The above-captioned case is before the undersigned United States Magistrate Judge on Defendant Jennifer Southwick's Motion for Summary Judgment (Doc. No. 145).[1]  The matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 72.1.  For the reasons discussed below, the Court recommends that Defendant Southwick's motion be granted.

---

[1]  The Court notes that the spelling of Ms. Southwick's first name in the pleadings and case caption is apparently in error, however, the Court will adhere to the case caption spelling as it has received no motion or stipulation to change the caption.

1

I.      **BACKGROUND**

Plaintiff is a prisoner at the Minnesota Correctional Facility (MCF) in Moose Lake, Minnesota.  He originally sued numerous prison officials under 42 U.S.C. § 1983 for alleged violations of his civil rights based on events occurring in late 2005 and early 2006 when he was incarcerated at the MCF in Rush City, Minnesota.  Several of the state-employee defendants brought a motion for summary judgment, which the court granted, on August 19, 2008.   One of the remaining defendants, Ms. Southwick, who brings the instant motion to dismiss, is a physician assistant with whom Plaintiff has treated.   In the operative complaint, the Third Amended Complaint, filed on January 31, 2007, Plaintiff alleges that Ms. Southwick acted with deliberate indifference to his medical needs.  Specifically, he claims that he was prevented from receiving recommended treatment for serious stomach upset, that he was refused a lower bunk which he claims was necessary due to a serious back disorder and that he was refused much-needed sinus medication.

Ms. Southwick is employed by Correctional Medical Services, Inc., which provides health care services to offenders in Minnesota correctional facilities, including the facilities in Rush City and Moose Lake.  On June 30, 2004, Plaintiff saw Defendant Southwick for complaints of allergies. (Ex. A-1 to Def. Southwick's Mem. Supp. Mot. Summ. J.)  The medical consult indicates that Plaintiff had had some difficulty in the past complying with the hours of operation of the Department of Corrections' "pill window."  According to Defendant Southwick, inmates may obtain observed medications, i.e., medications that must be taken at certain times or to prevent potential abuse of the medications, at the prison pill window.  If an offender fails to comply with the requirements for picking up medications at the pill window, the medication will

no longer be dispensed until the offender is reevaluated.  Because Plaintiff had missed several doses of medications, Defendant Southwick explained the importance of taking his medications regularly in order to alleviate his allergy symptoms.  On examination during the June 20, 2004 visit, Plaintiff exhibited a histamine allergic response, but no nasal congestion.  Defendant Southwick prescribed Chlor-Trimeton for six weeks.

One of Plaintiff's allegations is that Defendant Southwick allowed a breach of privacy by permitting security officers to overhear information about Plaintiff's health.  (Third Am. Complaint at ¶ 45(d).)  Plaintiff does not provide further information in his complaint, but Defendant Southwick believes that this allegation refers to Plaintiff's visit on June 20, 2004. (Southwick Aff. ¶ 25.)  The notes from that visit document that Plaintiff became agitated and was disrespectful to the nursing staff and to Defendant Southwick.  (Ex. A-1.)  Defendant Southwick states that the on-site Health Services Unit Correctional Officer, who provides protection for health care providers, came to the exam room door to make sure that Plaintiff behaved in an orderly manner.  (Southwick Aff. ¶ 25.)  The Correctional Officer eventually asked Plaintiff to leave because of his behavior.  (Id.)  When Plaintiff was allowed back later that day, the medical notes indicate that he rolled his eyes at the nurse and became more disrespectful toward staff, but he controlled his behavior and did not become more agitated.  (Ex. A-1) Defendant Southwick does not know if the Correctional Officer who intervened on that occasion overheard anything related to Plaintiff's health, but she states that it is her practice to maintain the confidentiality of inmate medical information and she makes every effort to maintain inmates' privacy.  (Southwick Aff. ¶ 26.)

Plaintiff next saw Defendant Southwick on October 6, 2004, at which time he again

complained of allergies, specifically drainage in the throat.  (Ex. A-2.)  The objective findings on examination included nasal congestion and discharge.  Plaintiff and Defendant Southwick discussed whether particular medications had relieved his congestion in the past and because it appeared that Sudafed had provided some relief, Defendant Southwick ordered a prescription for Sudafed.

On January 24, 2005, Plaintiff again met with Defendant Southwick, complaining that his allergy medication was not working.  (Ex. A-3.)  Defendant Southwick discussed with Plaintiff which medications had worked in the past, but was unable to identify which ones had relieved his symptoms, in part because Plaintiff did not know the names of medications, only the colors. The notes from the visit reveal that Plaintiff demonstrated "a little bit of an attitude," stating it was Defendant Southwick's fault that he was on the wrong medication and that he, as an inmate, should not be expected to know the names of the medications.  Eventually, Plaintiff and Defendant Southwick determined that the medication Actifed worked best for him.  Defendant Southwick gave him a prescription for Actifed, reminding Plaintiff to be compliant with the dispensing hours of the pill window.

Also at this January 24th visit, Plaintiff reported chronic back pain.  He asked for a renewal of ibuprofen 800 mg, as opposed to taking the Motrin 200 mg ibuprofen available at the prison canteen.  Plaintiff stated that an earlier medical provider had instructed him to take one 800 mg ibuprofen, eat, and then take another tablet if he did not obtain pain relief.  Defendant Southwick informed Plaintiff that such use constituted an abuse of the medication, that there was no evidence of such advice in his medical chart, and that 800 mg of ibuprofen every 4-6 hours is the recommended dosage.  She prescribed ibuprofen 800 mg, 15 per month, to be used during the

4

most significant episodes of pain.  Ms. Southwick does not recall her specific conversation with

Plaintiff at this visit, but states that while it is her practice to advise patients to take ibuprofen

with food to help prevent stomach upset, it is not a medical necessity.  (Southwick Aff. ¶ 17.)

She does not recall ever speaking with anyone about a requirement that Plaintiff have food

available to him when taking ibuprofen and she notes that he always had the opportunity to

purchase food from the canteen to keep in his cell at his convenience.  (Id.)

Plaintiff next saw Defendant Southwick on May 16, 2005 for sinus and nasal congestion

complaints.  (Ex. A-5.)  Defendant Southwick noted that Plaintiff had been on several different

forms of therapy for chronic congestion.  During the consultation, Plaintiff stated that Actifed

and Chlor-Trimeton were effective for his symptoms, and he selected a prescription for Actifed.

Defendant Southwick again instructed Plaintiff that he needed to be compliant with the

medication, or it would be discontinued.  The medical consult notes, "He was somewhat upset

with this, stating that he was to take it as needed previously, and, again, this will be taken as

needed."  (Ex. A-5.)  Defendant Southwick noted that the medication would not work if not

taken on a regular basis and she instructed Plaintiff that sick call was available if he continued to

need treatment in the future.

On December 19, 2005 Plaintiff next saw Defendant Southwick for a follow up on a sick

call visit.  He had been seen in sick call on December 1, 2005, regarding the following: (1) low

back pain; (2) ineffective Motrin use; (3) lower bunk request; and (4) stomach upset due to

Motrin, leading to Plaintiff's request for a food supplement to reduce that side effect.  (Ex. A-6.)

At this visit, Plaintiff and Defendant Southwick discussed available alternatives to manage his

back pain and avoid stomach upset.  To relieve his pain and stomach symptoms, Plaintiff elected

to try Disalcid and Elavil, for which Defendant Southwick issued a prescription.

Defendant Southwick also reported a concern of blood in his stool.  He had previously been given Hemoccult cards by the nursing staff, which are used to collect stool samples for testing.  Plaintiff had not used them, however, so they were taken away from him.  Defendant Southwick issued new cards and instructed Plaintiff on how to use them.  He complied and the results of the testing showed no bleeding or abnormalities in his gastrointestinal system.  (Ex. A-7.)

Prior to the December 19, 2005 visit, Plaintiff had requested authorization for a lower bunk due to reported stiffness upon waking.  A request for a lower bunk is evaluated by either the Nursing Supervisor or the Director of Health Services, both of whom are Department of Corrections employees.  (Southwick Aff. ¶ 23.)  Using Department of Corrections criteria, it was determined that Plaintiff did not possess the criteria required for a lower bunk.  Defendant Southwick, who is not a Department of Corrections employee, states that she was not authorized to grant Plaintiff a lower bunk, and further noted that during her December 19, 2005 examination of Plaintiff, it appeared that he exhibited none of the medical criteria to warrant authorization for a lower bunk.  (Id.)  Defendant Southwick observed that Plaintiff's gait was normal and that he moved onto the exam table with no signs of physical distress.  He possessed a full range of motion and was able to bend and almost touch his toes.  In addition, x-rays of his lower back were normal and with the exception of some mild tenderness in the muscles near the spine, Defendant Southwick observed that Plaintiff's exam was within normal limits.  (Ex. A-6.)

The notes from the December 19, 2005 visit also indicate that Plaintiff had been fired from his prison job due to "misrepresentation" and was placed on room restriction.  (Ex. A-6.)

Plaintiff alleges that Defendant Southwick "relayed misinformation," causing a discipline report to be written, which consequently triggered Plaintiff's firing, "placement in population," and mental anguish and depression.  (Third Am. Complaint at ¶ 45(i)-(j).)   Defendant Southwick represents that she had no contact with anyone about Plaintiff's job or disciplinary issues. (Southwick Aff. ¶ 24.)

Plaintiff also alleges that Defendant Southwick rewrote doctors' orders.  (Third Am. Complaint at ¶ 45.)  Defendant Southwick contends that she wrote orders only in response to her encounters with Plaintiff, using her experience and independent medical judgment after reviewing his medical chart, speaking with him and performing any necessary examinations. (Southwick Aff. ¶ 27.)

Plaintiff alleges that Defendant Southwick neglected to review his medical file, choosing instead an "alternate method" of questioning Plaintiff.  (Third Am. Complaint ¶ 45(c).) He contends that Defendant Southwick chose this method to induce argument and to initiate controversy, as documented by notations in the medical records that Plaintiff was "argumentative."  (Id.)  Defendant Southwick responds to these allegations by stating that "speaking with a patient and obtaining the patient's perspective on his or her condition is an important part in evaluating the patient and determining the appropriate course of treatment." (Southwick Aff. ¶ 28.)  She maintains that it is her practice to both speak with patients directly and to review their charts and that she followed this practice in her encounters with Plaintiff. (Id.)

Plaintiff further alleges that Defendant Southwick dealt with him as though he were faking his condition.  (Third Am. Complaint ¶ 45(d).)  Defendant Southwick cannot recall a

situation in which she believed that Plaintiff was faking his condition, but believes that he may

be confusing times in which the objective findings of the examination did not explain Plaintiff's

subjective symptoms.  (Southwick Aff. ¶ 29.)  "This is not an uncommon occurrence with

patients who have chronic conditions such as back pain," Defendant Southwick contends.  (Id.)

Finally, Plaintiff alleges that Defendant Southwick overlooked treatment of Plaintiff's

liver enzymes related to his Hepatitis C.  (Third Am. Complaint ¶ 45(f).)  Defendant Southwick

maintains that she never evaluated Plaintiff's Hepatitis C condition nor did he exhibit any

problems that caused her concern regarding that condition.  (Southwick Aff. ¶ 18.)  Another

physician saw Plaintiff on March 22, 2005 and March 29, 2005 for reevaluation of his condition

with respect to Hepatitis C.  (See Ex. A-4.)  The consult notes from the March 22, 2005 visit

indicate that Plaintiff might be open to taking Hepatitis C treatment in the future, but was

unknowledgeable about it at that time.  (Id.)  At the March 29, 2005 visit, Plaintiff indicated that

he was unsure if he wanted treatment for Hepatitis C, but would be willing to talk to Phyllis

Lawyer, the Hepatitis C nurse practitioner.  (Id.)

Defendant Southwick brings this motion for summary judgment, arguing that there is no

genuine issue as to any material fact and that she is entitled to judgment as a matter of law.

Plaintiff filed no response to Defendant Southwick's motion and apparently refused to accept

service of the pleading on two occasions.  (See Doc. 151, Letter of 10/21/08 from C. Nearing to

Magistrate Judge Nelson.)  Because service is complete upon mailing, Plaintiff's refusal to

accept service of the pleadings and his lack of a response indicates to the Court that he does not

intend to file a response.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A non-moving party cannot rely on the "mere existence of <u>some</u> alleged factual dispute between the parties [to] defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphases in original).  "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then Rule 56 requires the entry of summary judgment in favor of the moving party.  <u>Id.</u> at 322-23.  All evidence will be viewed in the light most favorable to the nonmoving party.  <u>Vette Co. v. Aetna Cas. & Surety Co.</u>, 612 F.2d 1076, 1077 (8th Cir. 1980).

## III.     DISCUSSION

### A.      Defendant Southwick's Motion for Summary Judgment

As to Plaintiff's medical claims against Defendant Southwick, "[A] prison official violates the Eighth Amendment by being deliberately indifferent *either* to a prisoner's *existing* serious medical needs *or* to conditions posing a substantial risk of serious *future* harm."  <u>Weaver</u>

v. Clarke, 45 F.3d 1253, 1255 (1995) (comparing Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (existing medical needs), with Helling v. McKinney, 509 U.S. 25, 35 (1993) (future harm to health)). Under either an Estelle (existing medical needs) or Helling (future harm to health) case, a prisoner must prove both the objective and subjective elements of an Eighth Amendment violation.

The objective prong of an existing medical needs case requires the prisoner to prove that he or she has a serious medical need, or, in other words, "the deprivation alleged must be, objectively, 'sufficiently serious.'" Farmer v. Brennan, 511 U.S. 825, 837 (1994); Estelle, 429 U.S. at 105; Aswegan v. Henry, 49 F.3d 461, 464 (8th Cir. 1995); Weaver, 45 F.3d at 1255 n.2. "To constitute an objectively serious medical need or a deprivation of that need," the Eighth Circuit has "repeatedly emphasized that the need or the deprivation alleged must be either obvious to the layperson or supported by medical evidence, like a physician's diagnosis." Aswegan, 49 F.3d at 464 (collecting cases).

The subjective prong of both an existing medical needs and future harm case requires a prisoner to prove that a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[2] Farmer, 511 U.S. at 837. Thus, to violate the Eighth Amendment, "a prison official must have a 'sufficiently culpable state of mind.'" Farmer, 511 U.S. at 834. Prison officials who are aware of an excessive risk to an inmate's health but acted reasonably cannot be liable for a Eighth

_____

[2] In the context of future harm cases, the subjective prong should also "be determined in light of the prison authorities' current attitudes and conduct." Helling, 509 U.S. at 36.

Amendment violation, even if the harm was not averted.  Id. at 844; see also e.g., Prater v.

Dahm, 89 F.3d 538, 541 (8th Cir. 1996).  Rather, "[a] prison official's duty under the Eighth

Amendment is to ensure 'reasonable safety.'"  Farmer, 511 U.S. at 844.  Plaintiff brings several

medical-related Eighth Amendment claims including the denial of a request for a lower bunk, a

hernia claim, prescription sunglasses claim and assault injuries claim.

### 1. Lower Bunk Claim

Plaintiff alleges that Defendant Southwick denied him an allowance for a lower bunk,

which he believed was necessary due to lower back pain.  As a non-Department of Corrections

employee, however, Defendant Southwick had no authority to approve a lower bunk.

(See Southwick Aff. at ¶ 23.)  Even if she had, Defendant Southwick noted that when she saw

Plaintiff on December 19, 2005 that he did not appear to meet the medical criteria necessary for

the authorization of a lower bunk.  Even assuming that Plaintiff had alleged a serious medical

condition of back pain, he has failed to submit any material facts establishing that Defendant

Southwick knew of and disregarded an excessive risk to his health or safety with respect to the

need for a lower bunk.  Accordingly, his Eighth Amendment claim fails.

### 2. Hepatitis C/Liver Enzymes

As to Plaintiff's allegation that Defendant Southwick displayed deliberate indifference to

the treatment of his Hepatitis C/liver enzymes, he has presented no facts in support of this

allegation.  To the contrary, the record reveals that the issue did not arise in the course of his

contacts with Defendant Southwick, other than a notation that non-steroidal medications were

recommended in light of his Hepatitis C diagnosis (Ex. A-6) and again as a side note ("He also is

known to have Hepatitis C") regarding Plaintiff's self-reported prior use of high doses of

ibuprofen for back pain.  (Ex. A-3.)   Nor has Plaintiff submitted facts suggesting that Defendant

Southwick was deliberately indifferent to conditions – here, Hepatitis C and/or the evaluation of

his liver enzymes –  posing a substantial risk of serious future harm.  To the extent that treatment

for Hepatitis C arose with a different practitioner, Plaintiff was unsure if he even wanted it.  (See

Ex. A-5.)  In sum, Plaintiff's Eighth Amendment claim based on allegations related to Hepatitis

C and/or liver enzymes fails.

### 3.        Sinus Treatment/Distribution of Medication

        Plaintiff also alleges that Defendant Southwick was deliberately indifferent to the

treatment of his sinus condition.  Specifically, Plaintiff argues that Defendant Southwick failed

to permit him to medicate himself at times of his own choosing.  First, based on Plaintiff's proof

and the medical record before it, the Court is unconvinced that Plaintiff's sinus condition

constituted an objectively serious medical need or that the alleged inability to self-medicate his

sinus condition amounted to a deprivation of an objectively serious medical need.  Second, the

record reveals that Defendant Southwick reasonably treated Plaintiff's sinus complaints.

Defendant Southwick discussed past medications with Plaintiff in an ongoing attempt to

prescribe medication that would best alleviate his sinus problems.  The fact that Plaintiff was

required to abide by the facility's pill window method of dispensing the medication does not

demonstrate deliberate indifference – if anything, it demonstrates an effort to ensure that Plaintiff

received his medication at proper times.  Plaintiff's Eighth Amendment claim based on

allegations related to his sinus condition and the distribution of medication to treat that condition

fails.

### 4.      Pain Management/Stomach Upset

Plaintiff raises a claim involving the use of pain medication used to treat his back pain, and the consequent stomach upset resulting from use of pain medication.   Specifically, he takes issue with Defendant Southwick prescribing ibuprofen doses at longer intervals than he claims were previously prescribed and he alleges that Defendant Southwick initially advised him against taking food with the ibuprofen.  With respect to this medical claim, Plaintiff does not meet the standard of establishing an objectively serious medical need or the deprivation of a medical need.  The medical record contains no earlier prescription of ibuprofen to be taken in the manner alleged by Plaintiff.  Instead, the medical record makes clear that Defendant Southwick did, in fact, prescribe ibuprofen for Plaintiff's back pain, and she prescribed it in accordance with standard dosing recommendations.  (Ex. A-3.) The record also indicates that Plaintiff was aware of the treatment plan and agreed to it.  (Id.)  When Plaintiff later reported that the prescribed form of ibuprofen was ineffective, Defendant Southwick discussed alternative pain relief medications and prescribed Disalcid, in hopes of avoiding stomach upset.  (Ex. A-6.)  Plaintiff alleges that Defendant Southwick actively misinformed other prison staff about his condition by stating that he did not need to take food with ibuprofen, ultimately causing him to lose his job.  Other than Plaintiff's bald allegations, there is no proof to support his claims.  Rather, the record shows that Defendant Southwick did not pass along medical information or cause Plaintiff to lose his job.  In sum, Plaintiff has failed to meet both the objective and subjective standards required to maintain a viable Eighth Amendment claim regarding his back pain and stomach upset.

### 5.      Manner of Treatment

Plaintiff alleges a variety of complaints related to the manner in which Defendant Southwick treated him.  He contends that Defendant Southwick believed him to be feigning illness, that she "questioned" him instead of reviewing his medical record, that she 'overrode his will with her own,' that she stopped certain medications inappropriately and re-wrote orders and that she failed to adequately protect his privacy.   What Plaintiff alleges does not amount to an objectively serious "medical need."  Instead, Plaintiff's allegations underscore a profound misunderstanding of his medical treatment.  At no time does the record even suggest that Plaintiff feigned symptoms or malingered.   The "questioning," as evidenced in the medical record, consists of basic fact-gathering that any competent medical provider undertakes when consulting a patient.  Plaintiff presents limited facts about his allegation of a violation of medical privacy, but it appears that the situation at issue involved the need for prison security due to Plaintiff's behavior.  The allegation that Defendant Southwick "overrode Plaintiff's will," in the context of examining him and providing medical care, suggests that Plaintiff did not like the care or treatment prescribed – nothing more.  It does not form the basis of a constitutional violation.  As to the allegation that Defendant Southwick stopped or changed medications or the method of dispensing medication, the record again reflects that Plaintiff received appropriate medical treatment and medication.  Finding no genuine issue of material fact, Plaintiff's Eighth Amendment claims of deliberate indifference against Defendant Southwick should be dismissed.

**B.     Failure to Prosecute Against Defendants Kendal, Sorry and Rossolli**

By order of July 25, 2008, the Court directed Plaintiff to:  (1) notify Defendants Kendal**,** Sorry and Rossolli immediately that they were required to make an appearance or move for an extension of time to do so; (2) file an application for entry of default unless the required pleading

or motion was filed within ten days of the notification; or (3) advise the court in writing of any good cause to the contrary.  (Doc. No. 141, 7/25/08 Order.)  The Court further informed Plaintiff that his failure to comply with the Order by August 22, 2008 would result in the recommendation that the claims against Kendal, Sorry and Rossolli be dismissed for lack of prosecution.  Plaintiff has filed nothing with the Court indicating his compliance with the July 25, 2008 Order. Accordingly, the Court recommends that Plaintiff's claims against Kendal, Sorry and Rossolli be dismissed for lack of prosecution.

## IV.     RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED that:**

1.      Defendant Southwick's Motion for Summary Judgment (Doc. No. 145) be

   **GRANTED;**

2.      The action against Defendants Kendall, Sorry and Rossolli be **DISMISSED** for

   failure to prosecute;

3.      The Clerk's Office should **DISMISS** former Defendant Ralph Flesher, as he is

   not a named defendant in the Third Amended Complaint; and

4.      This action should be **DISMISSED WITH PREJUDICE** in its entirety.

Dated: January 29, 2009

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 13, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a

forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.